Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Bowie presiding, along with Justice Moore and Justice Wharton. The first case this morning is number 519-0535, People v. Porter. Arguing for the appellant currently, Ronald Porter is Christopher Seeloff. Each side will have up to 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will hit the gavel. And please remember only the clerk is permitted to record these proceedings today. Good morning, council. How's everybody? Morning, judges. So this is 519-0535, People v. Porter. There was a motion to supplement the record, I believe, to add the video of the stop that we're discussing today. Is there any objection to that, Mr. Daly? Well, it was my motion. I think the court had already granted it. Okay. I just wanted to make sure. Are you ready to proceed? I am, Your Honor. Then go right ahead. Good morning, guys. May it please the court and council, my name is Patrick Daly. I'm here on behalf of the people of the state of Illinois. This is an appeal brought subsequent to a court judgment suppressing evidence and quashing an arrest in this case. This is a somewhat unusual case, but let's start by saying this. It really kind of comes down to a credibility determination. This is what the trial court judge ultimately found here that the officer's testimony about essential facts, which would have legally permitted the removal of the defendant from the vehicle and search of the defendant and defendant's vehicle were not credible. This is coming from the testimony of the single witness at the hearing, which is John Davis of the St. Clair County Sheriff's Department. Now, in this case, there are really kind of two parts to it. There was a hearing in which officer or, you know, Sheriff's Deputy Davis testified, and then a video. The video was not played at the hearing. It wasn't discovered until the conclusion of the hearing that the video even existed. The court ordered the state to produce the video. And after reviewing that video, apparently ex parte, there's nothing in the record to show that there's any reconvening of the court proceedings to discuss it. The court ultimately entered its order quashing arrests and suppressing evidence. Now, I'm not going to belabor all the facts, but it might be helpful, I think, to kind of go through what the testimony was and then accentuate or kind of highlight what the video shows and what it doesn't show and how that sort of plays into the state's argument here. Because what our position is, is this. It is true, manifestly, that this court defers to credibility determinations by the lower court. Because the court is in the best position to consider the evidence here, the testimony, the witnesses, etc. And I won't deny the fact that testimony, critical testimony provided by Davis, was not in accord with the video. That being, most specifically, the discovery of the cannabis in the vehicle, which apparently prompted Davis to ask the defendant to get out of the car. That said, our principal thesis is that while that testimony and that video evidence does not align, both the testimony and the video, and the video is really kind of a true statement of what happened, right, because it's a contemporaneous recording of the events, is that Davis did, in fact, observe cannabis, that he did have the defendant exit the vehicle, that it appears that the defendant attempted to discard or do something with the cannabis. And all of this, I believe, is corroborated both by the physical activities that took place on the video, as well as audio that was picked up near the conclusion of when the defendant was brought back to the squad car, and the, I guess, in-car microphone was able to pick up the conversation that took place. Now, here, Davis received an anonymous tip regarding a vehicle and a defendant, who apparently, the tipster said that the defendant had drugs and a weapon. A description was provided of the vehicle, and the defendant's was actually provided. About two hours later, two and a half hours later, Davis observed this vehicle at a gas station, which matched the description and elected to follow it, looking for a traffic violation. So, the court says, well, this is a pretextual stop, but a permissible one, and I think that's a correct conclusion. There, the officer observed the car speeding, 15 to 40, pulled the car over, and then, at the hearing, testified that he observed or detected an odor of fresh cannabis from the vehicle. The defendant appeared nervous. He approached the vehicle, while another officer that had been contacted, Scott Mormon, who did not testify at the hearing below, went to the passenger side, and that the Mormon appeared to be doing most of the talking, that Davis was on the passenger side, he was engaged in looking at the vehicle, and interacting with the defendant, when he saw what he claimed at the hearing to be a baggie of cannabis on his lap. Seeing that... Has cannabis ever recovered, Mr. Daly, or entered into evidence? It was not, Your Honor, no. No, and to address that point, you know, we have a situation here, where it appears to be, by all, both at the hearing, and I think that you can kind of tell from the video itself, and the audio, a small amount of cannabis, which obviously led, eventually, to much more serious charges. So, you know, it would obviously be nice if that kind of evidence were recovered, just as a matter of corroborative, you know, evidence, but again, it's something I think that the officers could probably discard, in view of the more serious charges that stemmed that the existence of cannabis is not supported by the evidence, or the dash cam, and therefore, not credible. Well, I think that when you look at the video, you will see... Now, the video does not show, as Davis testified, that, you know, he saw it was in the lap, and it fell out of the vehicle, and onto the ground, which is what he testified. What the video does show, is that something, relatively early into the interaction with the defendant in the vehicle, prompted his immediate, sort of, request, or demand that defendant exit the car. All right, so he saw something, I think that's a reasonable inference. Next, as a defendant is getting out of the car, you can see clearly in the video, the defendant is exiting, then reaches back into the car, which appears to be his left hand, tries to throw something in the car, is reaching into the vehicle. Davis stops him, takes him along to the side of the car. At this point, there's no audio, okay, but apparently, then, defendant is searched. When they get back to the car, you can clearly hear, you have to turn the volume up a bit, but you can hear Davis say, I saw you throw the dope or weed on the floor when you stepped out. Now, the defendant's responses to these statements are largely not audible, but there is a little bit of cross-talk that happens for the next minute or so, and Davis then says, well, it was a little bud, what else do you have? You can hear that. The point being here is that while Davis' testimony was mistaken, I think that this court has to cleave a distinction between mistaken testimony on a video, which apparently, probably no one watched before the hearing, and it happened months earlier than the traffic stop itself, or months later than the traffic stop itself, this hearing did, and say, all right, well, there's a little doubt that, one, Davis was mistaken, but, two, that the basic constitutional premise justifying him being taken out of the car and having the vehicle searched is, in fact, corroborated by the video, that Davis was not incorrect that he observed cannabis, because that's apparently what you hear him say on the video, and there's a little reason to believe, or that he's just sort of making that up as he went along at that point. He was not correct in terms of it, you know, falling onto the ground outside of the car. It appears that it was all inside of the vehicle, but there's little doubt, at least based upon what we see in the video, that he believed that he saw cannabis, and there's nothing to rebut that, nor is there anything to rebut the propositions that, you know, he smelled fresh cannabis in the car, and so now the court had focused on a couple of other aspects of it being that time in which that Davis was at the vehicle and what he was doing or what he was seeing inside. The video itself shows that the interaction of Davis with the vehicle is about 40 seconds or so before Davis has him get out of the car. It's not readily ascertainable whether there was actually any conversation that took place with Davis or not. I think Davis had testified that there was some, but that the video does not necessarily refute, you know, the defendant's actions in terms of his actions of his focus being on Moorman at the passenger side of the car, but I think that really the principal concern of the court, because other than that, that instance of the cannabis and the observation of the cannabis, which is a critical justification for having defendant removed from the car, and there was no doubt that that was a lawful request, if true. Everything else that happened in the video, everything else that Davis testified to, the court found to be, you know, lawful actions on the part of Davis, and the court did not, as I think the defendant argues on appeal, sort of find Davis to be not credible generally. It just found not to be credible, the testimony about the cannabis and the observation of the cannabis. But again, credibility versus mistakenness, these are two different things. One, well, doesn't mistakenness affect his credibility? Mistakenness can affect his credibility, but again, Your Honor, the question here is the facts that give rise to the legal justification for him being asked out of the vehicle. And if that legal justification is supported or premised on the notion that cannabis was observed by Davis in defendant's possession, then that removal from the vehicle is perfectly lawful. And so it's our position, Your Honor, is to conclude that the court's order suppressing evidence was an error where the video evidence supported the legal justification for the removal and ultimate search of the defendant, and subsequently the car, and that this court should reverse and remand this cause. Thank you, Your Honors. Thank you, Mr. Daly. Obviously, you'll have time for rebuttal, Mr. Seeloff. Your Honors, may it please the court, my name is Chris Seeloff with the Appellate Defender's Office, and I represent the defendant, aptly in this case, Mr. Ronald Porter. Where Mr. Porter was removed from his car, searched, handcuffed, and placed in a police cruiser, all without probable cause or reasonable suspicion, he was entitled to a court suppressing any evidence found in that search and quashing his arrest. The trial court, in this case, made such an order. In reviewing a trial court's order on a motion to suppress, factual findings will only be disturbed if they are against the manifest weight of the evidence, while any legal conclusions are reviewed de novo. Because the trial court's factual findings are directly supported by video evidence, and its legal reasoning is sound, Mr. Porter respectfully requests that this court affirm the trial court's order to suppress evidence and quash arrest. As my first point, Your Honors, the trial court's factual findings are directly supported by the video evidence. In its court, in its order grading the defense's motion to suppress and quash arrest, the trial court found that Deputy Davis's testimony at the hearing on the defense's motion to suppress was not credible. Trial court's basis ruling in large part on the discrepancy between Davis's testimony and video of Davis's dash cam. Now, the state points out that the trial court's finding of non-credibility means that they found him not credible generally, just mistaken. But for Fourth Amendment jurisprudence, the distinction is one without a difference, in that if your testimony is unreliable, that's the important part. It doesn't matter whether you were mistaken or your testimony was incredible. It is well settled that a finder of fact is vested with wide discretion when it comes to factual findings and credibility determinations. Those factual findings are to be reviewed for clear error and only overturned if they are against the manifest weight of the evidence. As this court has said in People v. Firesteam from 2019, discrepancies between video evidence and officer testimony must be resolved in favor of what the video shows. Davis testified that he didn't know whether Deputy Mormon joined him at the stop or when he arrived to assist, but the video evidence clearly shows that Mormon was, in fact, the first police officer to arrive at Mr. Porter's car. It's possible that Davis simply forgot whether he or Mormon arrived at the vehicle first, but his absentmindedness suggests that he did not actually recall the stop accurately when testifying at the hearing. Defense counsel asked Davis what he said when he talked with Mr. Porter, and Davis said he always introduces himself and explains the reasoning for a stop. Yet looking at the video evidence, there's no indication of any conversation between Davis and Mr. Porter. In fact, the video evidence clearly shows that while Mormon is questioning the occupants of the vehicle at the passenger side, Davis is looking through the back driver's seat window into the back seat, and this can be seen in the video from 56 seconds to a minute and 15 seconds. Davis also testified that when he opened the vehicle door and asked Mr. Porter to step out, a baggie of marijuana fell to the ground. However, the video evidence does not any object falling from Mr. Porter's lap onto the ground. In its opening brief, the state attempts to argue that Davis's testimony was plain and mistaken rather than not credible generally, and that Davis simply meant that he saw Mr. Porter throw something onto the floor of his vehicle. There is, however, a large difference between something falling from someone's lap onto the ground and someone turning around to throw something back into their car behind them. Given the many discrepancies between Davis's testimony and his dash cam video, it was reasonable for the trial court to doubt Davis's testimony and declare it not credible. It would have been strange indeed if the trial court noted these many discrepancies but found Davis credible. Because no part of the trial court's factual findings are against the manifest weight of the evidence, the court must then consider whether the trial court's legal findings were accurate. This is the second point on appeal, your honors. The trial court's legal reasoning that Davis's search was pretextual and violated Mr. Porter's Fourth Amendment rights is legally sound. The trial court found that Davis's failure to ask for ID, insurance, or registration per his testimony supports the contention that the officer's stop was not for violation of traffic law but was instead used to fulfill his ambition to detain the defendant for a drug-related offense. The state argues that Davis never unconstitutionally extended the stop, but this argument overlooks the fact that the trial court found that Davis, quote, the arrest and seizure because he did not do anything that would perfect a legitimate traffic stop or provide any sort of reasonable suspicion for search and seizure. The simple irony of this case is had Davis done anything to legitimate the traffic stop, there likely wouldn't have been a constitutional question in this case. Had Davis actually engaged in conversation with Mr. Porter or even looked through the driver's front side window, any alleged baggie of marijuana in Mr. Porter's lap would likely have been visible in plain sight. Instead, as the video evidence clearly shows, Davis walks up to the driver's side of the car, looks into the back seat for a few moments, then moves directly to opening Mr. Porter's door and pulling him out of the car. During his testimony, Davis says that he always tells the person he has stopped who he is and the reason for his search. Either Davis forgot to do the one thing he always does when effectuating a traffic stop or he violated Mr. Porter's Fourth Amendment rights against search and seizure when he pulled him out of the car before there was any chance to marijuana. The trial court did not grant the defense's motion on a technicality, but rather because there's no way Davis could have seen anything creating reasonable suspicion before conducting a search and seizure of Mr. Porter. And as your honor, just to touch on a few things from the state's opening, your honors, the to reiterate the marijuana in this case has never been entered into evidence as far as we understand. The last time anybody saw it in this case was allegedly that the traffic stopped for Mr. Porter. It was never presented during the motion hearing. As I understand it, it hasn't been tenored into evidence through discovery at all. I would also like to point out that Deputy Mormon never testified. There's no indication that he was unavailable for testimony on the day of the hearing and the state never moved for a motion to reconsider in this case where Deputy Mormon also could have testified. There were ample chances for the state to attempt to rectify what Judge Cruz found in her trial order to be deficient or incredible testimony that didn't support the state's requests. However, none of those options were taken. The trial court's factual findings that Davis's testimony was not credible is directly supported by the dash cam video from Davis's own squad car. The video evidence clearly rebuts testimony on nearly every important element of the motion at issue. Where no other witnesses testified at the hearing, including Mormon, who assisted Davis during the stop, and the video evidence shows an entirely different series of events in Davis's testimony, no part of the trial court's factual findings were against the manifest weight of the evidence. Additionally, where the video evidence clearly shows that Davis did nothing to perfect a legal traffic stop that would have created a legitimate pretext for search and seizure, the trial court properly found that the search and arrest violated Mr. Porter's Fourth Amendment rights. For the reasons stated in Mr. Porter's brief and those made here today at oral argument, Mr. Porter respectfully requests this court affirm the trial court's ruling granting the defense's motion to suppress and quash arrests. Thank you. Thank you, counsel. Mr. Daly? Thank you, your honor. Starting kind of briefly here with the pretextual and the court's jumping the gun observation, I think it's important to note that pretextual stops are not themselves unlawful, provided there is a correlating lawful justification to make a stop. So officers are permitted to stop a vehicle if there's a suspicion of drug activity or other criminal activity, as long as there's another reason to do so. No one here and even the court found that the stop of the vehicle based upon the observed traffic violation was lawful. I think that the court's focus on pretextual largely involves the court's belief that Davis did not or apparently was not finding credible the observation of the cannabis because if the stop itself was lawful and this is not a situation where the stop was unlawfully extended to the extent that it didn't fall outside the normal time frame in which an ordinary traffic stop would be taking place and that cannabis was in fact observed, I don't think there's any doubt and I think even the judge probably would have found that the removal of defendant from the vehicle and all subsequent events was justified and lawful. So that's what it really kind of came down to for the court. But defendant does not I think it has to be addressed what is actually on the video and again if our focus and inquiry here is upon the observation of the cannabis and the legal import the constitutional import of that observation with regards to the ultimate conclusion about whether the defendant could be lawfully removed from the vehicle etc. Then one has to basically ignore that which the video shows and that is Davis's you know unambiguous statement about you know seeing him throw dope on the floor of the car. Okay and the actions of the defendant and the actions of Mormon and the spontaneity of Mormon sort of asking him to get out of the car seems to corroborate this notion that he saw something that was in defendant's possession which prompted these because it didn't seem to happen as part of any kind of organic interaction with Mormon. Now with regards to Mormon I do agree with counsel on one point it would have been better if Mormon had testified but by that same measure you know not knowing what Mormon would have said and again Mormon was not involved with the defendant driver. We don't know what he observed but clearly his focus was likely on the passenger because that's where that interaction was taking place. You know it can't be said you know definitively that he would have added anything that would have changed the ultimate outcome here nor is the court required to by the way move to reconsider it's under no legal obligation to move to reconsider. It can simply just appeal as it did here so I don't think that that's a fact that this court should take into consideration. Defendant and I know in my reply brief as well I mean if defendant focuses on on how it characterizes several minutiae that seems to have as his ultimate conclusion that credibility sort of has to align with the video and testimony for that credibility to be intact but as a matter of human nature if you don't watch a video and you're handling hundreds of traffic stops in the course of months or at least if not hundreds a lot I think it's fair to say that a lot happens between month one and month five and then you're put on the stand and you have to cold give a cold recollection of what happened without looking at the video or that video being perhaps used as part of the preparation process because clearly no one knew about it at the time of the hearing until Mormon brought it up at the end or there was discussion about it at the end. You know I don't think knocks Davis's credibility it simply shows that he didn't coach himself into saying exactly what the video said so again the court's order suppressing evidence which focused on I think the absence of evidence that aligns with the Mormon's test or Davis's testimony to the exclusion of for whatever reason what the video does show and I think that this court can observe for itself should allow this court to arrive at the conclusion that the court's ignoring that which does corroborate the general and salient and really the principle legal proposition of the observation that cannabis should prompt this court to reverse the judgment of the trial court and remand for further proceedings. Thank you your honors. Thank you counsel this matter will be taken under advisement and an order will be issued in due course. Thank you gentlemen. Thank you your honors. Thank you your honors.